IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

| | | |
|---|---|---|
| ANTHONY OLIVER, | * | |
| Plaintiff, | * | |
| v. | * | CV 423-178 |
| MCLANE, BEDNARSKI, & LITT, L.L.P.; DAVID MCLANE; BARRETT LITT; MARILYN BEDNARSKI; and DOES 1-10, | * | |
| Defendants. | * | |

# ORDER

Presently pending before the Court are Defendants' motion to dismiss (Doc. 6), Plaintiff's motion to remand (Doc. 7), and Defendants' renewed motion to dismiss Plaintiff's First Amended Complaint (Doc. 18). For the following reasons, Defendants' motion to dismiss is **DENIED AS MOOT**, Defendants' renewed motion to dismiss is **GRANTED**, and Plaintiff's motion to remand is **DENIED**.

## I. BACKGROUND

On March 10, 2023, Plaintiff filed suit in the Superior Court of Chatham County, Georgia. (Doc. 1-1.) On June 29, 2023, Defendants removed to this Court pursuant to 28 U.S.C. §§ 1441 and 1446. (Doc. 1.) The next day, Defendants moved to dismiss Plaintiff's Complaint. (Doc. 6.) On July 2, 2023, Plaintiff moved

to remand, arguing diversity jurisdiction does not exist because the amount in controversy does not exceed $75,000. (Doc. 7, at 3.) On July 20, 2023, Plaintiff filed his First Amended Complaint (Doc. 16), and on August 3, 2023, Defendants renewed their original motion to dismiss (Doc. 6) in response to Plaintiff's First Amended Complaint (Doc. 18). The Court summarizes the allegations in Plaintiff's First Amended Complaint (Doc. 16) and then addresses the Parties' motions.

Plaintiff brings eleven claims against Defendants: (1) Georgia Uniform Deceptive Trade Practices Act, O.C.G.A. § 10-1-370, et seq.; (2) Georgia Racketeer Influenced Corrupt Organizations Act; (3) Violation of Bad Faith; (4) Negligence Under Georgia Law; (5) Breach of Fiduciary Duty; (6) Conversion; (7) Breach of Contract; (8) Breach of Oral Contract; (9) Interference with Contractual Relations; (10) Unjust Enrichment; and (11) Intentional Infliction of Emotional Distress. (Doc. 16, at 12-23.)

Plaintiff alleges[1] Defendants "used deception and high-pressure tactics to steal nearly all of [his] incentive award from a federal lawsuit in which the Defendants used fraud, deception and manufactured evidence to pocket Plaintiffs['] money after their law firm started to go under, and fall apart." (Id. at 2.)

---

[1] At the motion to dismiss stage, the Court accepts as true all allegations in the complaint and construes all reasonable inferences in Plaintiff's favor. See Hoffman-Pugh v. Ramsey, 312 F.3d 1222, 1225 (11th Cir. 2002).

2

In April 2015, Plaintiff and Defendants met at a law firm in Pasadena, California where Defendants agreed to represent Plaintiff in a federal civil rights suit filed in the United States District Court for the Central District of California (the "California Case"). (Id. at 4.) Defendants agreed to represent Plaintiff and for him to serve as class representative for the California Case to vindicate Plaintiff's rights as a member of the Lesbian, Gay, Bisexual, and Transgender ("LGBTQ") community after he was mistreated by jail staff following an arrest in California. (Id. at 4-5.) Plaintiff traveled back to Georgia shortly after the California Case was filed. (Id. at 5.)

On April 11, 2018, Defendants agreed to mail Plaintiff three postal money orders for $3,000 as a gift to help him purchase a new vehicle, law school books, and to pay his rent. (Id.) Plaintiff and Defendants agreed the money did not have to be paid back, and they did not enter into any agreement that the money was a loan. (Id.) The same month, Defendants purchased Plaintiff a plane ticket so he could fly to California for a deposition, and they never informed him he was required to pay them back. (Id.) In January 2019, the California Case settled out of court, and Plaintiff was awarded $5,500 for his role. (Id. at 6.) Plaintiff was in custody in the Chatham County jail when the class administrator rendered payment to Defendants. (Id.) Before receiving payment, Defendants sought to deduct over $3,800 from

3

Plaintiff's $5,500 award. (Id. at 7.) Plaintiff alleges Defendants knew, or had reason to know, the $3,000 was a gift to Plaintiff and there was never an agreement that would permit Defendants to deduct any funds from him. (Id.) To support the additional $800 Defendants sought to deduct, Defendants forged documents dated October 2016 that allegedly allowed Defendants to pay Plaintiff's car payment to Navy Federal Credit, but Plaintiff never gave permission for Defendants to do so. (Id.) The letter Defendants produced was purportedly typed by Plaintiff while he was incarcerated at Chatham County jail without access to a computer. (Id. at 7-8.)

Defendants contacted the Chatham County Sheriff's Office and paid for a deputy to serve Plaintiff copies of Defendants' false documents used to deduce $3,800 from the California Case. (Id. at 9.) They later used the same means to serve Plaintiff copies of the California Case's Order allowing the deduction. (Id.) Plaintiff called Defendants and was informed to never call their office again. (Id.) Plaintiff tried to call again, and Defendants contacted Chatham County Sheriff's Office and directed them to prevent Plaintiff from calling them. (Id. at 10.) On February 5, 2021, Plaintiff reported Defendants McLane, Bednarki, and Litt to the State Bar of California. (Id.) Plaintiff has also sent several demand letters for the return of funds, but he has not received any of the $3,800. (Id. at 10-11.)

4

## II. DISCUSSION

The Court first considers Plaintiff's motion to remand (Doc. 7) and then Defendants' renewed motion to dismiss (Doc. 18).

### A. Motion to Remand

Plaintiff moves to remand this case to the Superior Court of Chatham County. (Doc. 7, at 1.) "Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree." Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994) (internal citations omitted). As such, a defendant may only remove an action from state court if the federal court would possess original jurisdiction over the subject matter. 28 U.S.C. § 1441(a).

#### 1. Legal Standard

Federal district courts have jurisdiction over all civil actions: (1) "arising under the Constitution, laws, or treaties of the United States"; and (2) "where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States." 28 U.S.C. §§ 1331, 1332. On a motion to remand, the removing party bears the burden of establishing federal jurisdiction. Williams v. Best Buy Co., 269 F.3d 1316, 1319 (11th Cir. 2001). Removal jurisdiction is construed narrowly with all doubts resolved in favor of remand. Mann v. Unum Life Ins. Co. of Am., 505 F. App'x 854, 856 (11th

5

Cir. 2013). In evaluating a motion to remand, the Court makes its "determinations based on the plaintiff's pleadings at the time of removal; but[,] the court may consider affidavits and deposition transcripts submitted by the parties." Crowe v. Coleman, 113 F.3d 1536, 1538 (11th Cir. 1997) (citation omitted).

2. Discussion

Defendants removed pursuant to 28 U.S.C. §§ 1441 and 1446, alleging the Court has original jurisdiction through diversity jurisdiction under 28 U.S.C. § 1332(a). (Doc. 1, at 1-2.) Plaintiff seeks remand, arguing the amount in controversy does not exceed $75,000. (Doc. 7, at 2-3.) Defendants responded in opposition (Doc. 13) and Plaintiff replied in support (Doc. 15). The Court addresses the Parties' arguments below.

Diversity jurisdiction requires complete diversity, which means "*each* defendant is a citizen of a different state from *each* plaintiff." Owen Equip. & Erection Co. v. Kroger, 437 U.S. 365, 373 (1978) (emphasis in original). The Parties do not dispute they are completely diverse, but they do dispute whether the amount in controversy meets the statutory threshold.[2] The issue before the Court is whether Plaintiff's Complaint, at the time of removal, "establishes an amount in controversy that exceeds $75,000, the

---

[2] In support of his motion, Plaintiff alleges he will be returning to the District of Nevada and residing there after his release from custody. (Doc. 15, at 3.) Defendants are all residents of California, so this has no bearing on the Court's analysis.

6

jurisdictional threshold set by 28 U.S.C. § 1332(a)." Blackwell v. Great Am. Fin. Res., Inc., 620 F. Supp. 2d 1289, 1290 (N.D. Ala. 2009); see also PTA-FLA, Inc. v. ZTE USA, Inc., 844 F.3d 1299, 1306 (11th Cir. 2016) ("[D]iversity jurisdiction is determined at the time of filing the complaint or, if the case has been removed, at the time of removal." (citations omitted)).

Plaintiff did not specify the total amount of damages requested in his Complaint, thus, "the burden is on . . . [D]efendant[s] to prove by a preponderance of the evidence that the amount in controversy, exclusive of interest and costs, exceeds $75,000.00." Butler v. Charter Commc'ns, Inc., 755 F. Supp. 2d 1192, 1194 (M.D. Ala. 2010) (citing Tapscott v. MS Dealer Serv. Corp., 77 F.3d 1353, 1357 (11th Cir. 1996), *abrogated on other grounds by* Cohen v. Off. Depot, Inc., 204 F.3d 1069 (11th Cir. 2000)). At this stage, "the pertinent question is what is in controversy in the case, not how much the plaintiffs are ultimately likely to recover." Pretka v. Kotler City Plaza II, Inc., 608 F.3d 744, 751 (11th Cir. 2010) (emphasis and citations omitted). In assessing the amount in controversy, "the court may consider facts alleged in the notice of removal, judicial admissions made by the plaintiffs, non-sworn letters submitted to the court, or other summary judgment type evidence that may reveal that the amount in controversy requirement is satisfied." Frye v. Daimler Trucks N. Am., LLC, No. 1:18-CV-4827, 2019 WL 5586575, at *1 (N.D.

7

Ga. Jan. 2, 2019) (citing Pretka, 608 F.3d at 754). This evidence may be "combined with reasonable deductions, reasonable inferences, or other reasonable extrapolations." Pretka, 608 F.3d at 754. "[N]either the defendants nor the court may speculate," however, and "the existence of jurisdiction should not be divined by looking to the stars." Lowery v. Ala. Power Co., 483 F.3d 1184, 1214-15 (11th Cir. 2007). Consequently, all doubts about the propriety of removal should be resolved in favor of remand. King v. Gov't Emps. Ins., 579 F. App'x 796, 800 (11th Cir. 2014) (citation omitted).

Defendants contend the amount in controversy exceeds $75,000 and reference paragraph 57 of the Complaint, which states: "Plaintiff is entitled to recover punitive damages . . . [and Defendants] caused [Plaintiff] injuries and damages in the amount of $3,000,000.00." (Doc. 1, at 2 (citing Doc. 1-1, at 18).) In his request to remand, Plaintiff argues his request for punitive damages does not mean more than $75,000 is in controversy. (Doc. 7, at 6.) Without citation to any case or statute, Plaintiff asserts "[p]unitive damages are exclusive from the jurisdictional amount[] and are insufficient to establish jurisdiction." (Id. at 2.) In response, Defendants argue Plaintiff's contention punitive damages do not count towards the amount in controversy is contrary to law, but regardless, the amount in controversy exceeds $75,000 despite punitive damages and attorney's fees. (Doc. 13, at 4-5.)

8

"[I]n determining the jurisdictional amount in controversy in diversity cases, punitive damages must be considered . . . unless it is apparent to a legal certainty that such cannot be recovered." Blackwell, 620 F. Supp. 2d at 1290 (quoting Holley Equip. Co. v. Credit All. Corp., 821 F.2d 1531, 1535 (11th Cir. 1987) (quotation marks omitted and alterations adopted). There is no indication punitive damages cannot be recovered to a legal certainty. Thus, the Court finds Defendants acted correctly in using Plaintiff's allegations of punitive damages to justify the threshold amount required for diversity jurisdiction. Nevertheless, as Defendants correctly point out, even ignoring the punitive damages request, Plaintiff's other allegations also exceed the $75,000 threshold. (Doc. 13, at 6.)

Plaintiff's Complaint contains many allegations against Defendants, including that Defendants caused him to lose "in excess of $200,000" in judgments on his computer, which was inside his vehicle that was repossessed due to Defendants' actions. (Id. (citing Doc. 1-1, at 10).) Although Plaintiff failed to make a clear request for a total amount of damages in his Complaint, "it may be 'facially apparent' from the pleading itself that the amount in controversy exceeds the jurisdictional minimum." Roe v. Michelin N. Am., Inc., 613 F.3d 1058, 1061 (11th Cir. 2010) (citation omitted). The Eleventh Circuit "permits district courts to make reasonable deductions, reasonable inferences, or other

9

reasonable extrapolations from the pleadings to determine whether it is facially apparent that a case is removable." Id. at 1061-62 (citation omitted). The Court concludes it is facially apparent from the Complaint, even ignoring the punitive damages request, that Plaintiff's allegations of damages satisfy the $75,000 threshold. (See Doc. 1-1, ¶¶ 25, 29, 31, 49, 57, 72.) Based on the foregoing, the Court finds Defendants met their burden of establishing diversity jurisdiction, and Plaintiff's motion to remand (Doc. 7) is **DENIED**.

The Court notes Plaintiff filed his First Amended Complaint in this Court on July 20, 2023 and removed many references for damages. (Doc. 16.) Despite these changes, the Court's analysis does not change because it must make its "determinations based on the plaintiff's pleadings at the time of removal." Crowe, 113 F.3d at 1538 (citation omitted).

**B. Motion to Dismiss**

Defendants moved to dismiss Plaintiff's Complaint on June 30, 2023. (Doc. 6.) Plaintiff filed his First Amended Complaint on July 20, 2023. (Doc. 16.) Defendants then filed a renewed motion to dismiss, adopting the same arguments it put forth in its original motion to dismiss.[3] (Doc. 18.) Plaintiff opposes the motion. (Doc. 17.)

---

[3] Because Defendants' renewed motion to dismiss (Doc. 18) simply reiterates the original motion to dismiss (Doc. 6), the Court finds the original motion to dismiss shall be **DENIED AS MOOT**.

10

1. <u>Legal Standards</u>

Defendants move to dismiss Plaintiff's First Amended Complaint under Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6). (Doc. 6, at 1; Doc. 18, at 1.)

"In the context of a motion to dismiss for lack of personal jurisdiction in which no evidentiary hearing is held, the plaintiff bears the burden of establishing a prima facie case of jurisdiction over the movant, nonresident defendant." <u>Morris v. SSE, Inc.</u>, 843 F.2d 489, 492 (11th Cir. 1988). The plaintiff establishes a prima facie case by presenting "enough evidence to withstand a motion for directed verdict." <u>Madera v. Hall</u>, 916 F.2d 1510, 1514 (11th Cir. 1990). A party presents enough evidence to withstand a motion or directed verdict by putting forth "substantial evidence . . . of such quality and weight that reasonable and fair-minded persons in the exercise of impartial judgment might reach different conclusions." <u>Walker v. Nations Bank of Fla.</u>, 53 F.3d 1548, 1554 (11th Cir. 1995).

In assessing a motion to dismiss for lack of personal jurisdiction, the facts presented in the plaintiff's complaint are taken as true to the extent they are uncontroverted. <u>Cable/Home Commc'n Corp. v. Network Prods., Inc.</u>, 902 F.2d 829, 855 (11th Cir. 1990) (citations omitted). If the defendant submits affidavits challenging the allegations in the complaint, however, the burden shifts back to the plaintiff to produce evidence

11

supporting jurisdiction. Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc., 593 F.3d 1249, 1257 (11th Cir. 2010) (citation omitted). If the plaintiff's complaint and supporting evidence conflict with the defendant's affidavits, the court must construe all reasonable inferences in favor of the plaintiff. Id. (citation omitted).

To survive a Rule 12(b)(6) motion to dismiss, a complaint must include enough "factual allegations to raise a right to relief above the speculative level," and those facts must "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 545, 570 (2007). Although a complaint attacked by a Rule 12(b)(6) motion need not be buttressed by detailed factual allegations, the plaintiff's pleading "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. at 555. The Rule 8 pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 555).

A complaint should not be dismissed for failure to state a claim, however, "unless it appears beyond a doubt that the plaintiff can prove no set of circumstances that would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957); see also Robinson v. United States, 484 F. App'x 421, 423 (11th Cir. 2012) (citation omitted). At this stage, courts must accept as true all

facts alleged in the complaint and construe all reasonable inferences in the light most favorable to the plaintiff. Belanger v. Salvation Army, 556 F.3d 1153, 1155 (11th Cir. 2009) (citation omitted).

2. Discussion

First, Defendants argue the Court lacks personal jurisdiction over them. (Doc. 6-1, at 5-9.) Defendants assert they are all citizens of California and do not have minimum contacts with the State of Georgia. (Id. at 6.) While Plaintiff alleges Defendants transacted business in Georgia, the only allegations that occurred in Georgia relate to contact with Plaintiff in furtherance of the California case, which stemmed from alleged mistreatment in a California jail. (Id. at 7.) Defendants assert they did not purposely avail themselves to the jurisdiction of Georgia, and any contact with it was necessitated by Plaintiff's relocation to pursue his personal goals. (Id.) In response, Plaintiff argues Defendants acted under the Georgia long-arm statute, transacted business in Georgia when they contacted Chatham County probation officers, and mailed money to Plaintiff's home in Georgia, among other actions. (Doc. 17, at 4-5.) Ultimately, Plaintiff argues Defendants' contacts with Georgia are substantial. (Id. at 8.)

To determine whether a nonresident defendant is subject to personal jurisdiction, the Court must perform a two-part analysis. United Techs. Corp. v. Mazer, 556 F.3d 1260, 1274 (11th Cir. 2009).

13

First, the Court must determine whether the exercise of personal jurisdiction is proper under the forum state's long-arm statute as that statute would be interpreted by the state's supreme court. Id. Next, the Court must determine whether there are sufficient "minimum contacts" with the forum state to satisfy the Due Process Clause of the Fourteenth Amendment. Id.; Int'l Shoe Co. v. Washington Off. of Unemployment Comp. & Placement, 326 U.S. 310 (1945).

> Georgia's long-arm statute provides in relevant part:
>
> A court of this state may exercise personal jurisdiction over any nonresident or his or her executor or administrator, as to a cause of action arising from any of the acts, omissions, ownership, use, or possession enumerated in this Code section, in the same manner as if he or she were a resident of this state, if in person or through an agent, he or she:
> (1) Transacts any business within this state;
> (2) Commits a tortious act or omission within this state, except as to a cause of action for defamation of character arising from the act;
> (3) Commits a tortious injury in this state caused by an act or omission outside this state if the tort-feasor regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state.

O.C.G.A. § 9-10-91. Plaintiff argues Defendants transacted business in Georgia and committed tortious conduct in the state, under the first and second prongs of the long-arm statute. (Doc. 17, at 6-7.) To exercise jurisdiction over a nonresident defendant who transacts business within Georgia, Plaintiff must establish:

> [(1)] the nonresident must have purposefully done an act or consummated a transaction in Georgia; [(2)] the cause of action must arise from or be connected with such act or transaction; and [(3)] the exercise of jurisdiction by the courts of this state must not offend traditional [notions of] fairness and substantial justice.

Gateway Atlanta Apartments, Inc. v. Harris, 660 S.E.2d 750, 757 (Ga. Ct. App. 2008) (citation omitted). Georgia courts broadly interpret the first prong of this analysis as neither requiring "the physical presence of the nonresident in Georgia" nor minimizing "the import of a nonresident's intangible contacts with the State [of Georgia]." Innovative Clinical & Consulting Servs., LLC v. First Nat'l Bank of Ames, 620 S.E.2d 352, 355 (Ga. 2005); see also Aero Toy Store, LLC v. Grieves, 631 S.E.2d 734, 739 (Ga. Ct. App. 2006) ("[A] single event may be a sufficient basis for the exercise of long arm jurisdiction if its effects within the forum are substantial enough even though the nonresident has never been physically present in the state." (citing Shellenberger v. Tanner, 227 S.E.2d 266, 266 (Ga. Ct. App. 1976))); Diamond Crystal Brands, Inc., 593 F.3d at 1264 ("[A] nonresident's mail, telephone calls, and other 'intangible' acts, though occurring while the defendant is physically outside of Georgia, must be considered." (citation omitted)). As such, the first prong requires the Court to "examine all of a nonresident's tangible and intangible conduct and ask whether it can fairly be said that the nonresident has

15

transacted any business within Georgia." Diamond Crystal Brands, Inc., 593 F.3d at 1264.

Plaintiff alleges Defendants had many interactions with him while he was living in Georgia, including buying him a plane ticket and sending him postal money orders to purchase a new car, books, and to pay his rent. (Doc. 16, at 5.) However, the Parties' business relationship was developed when Plaintiff lived in California, and it was no action of the Defendants that caused Plaintiff to move back to Georgia while their work was ongoing. (Id. at 4-5.) Thus, under prong one, Defendants did not purposefully act or consummate a transaction in Georgia, but the actions were solely a result of Plaintiff moving. See Gateway Atlanta Apartments, 660 S.E.2d at 757. Thus, Defendants also do not satisfy prong two because the transaction was not their purposeful act. See id.

As to prong three, "the exercise of jurisdiction by the courts of this state must not offend traditional [notions of] fairness and substantial justice." Id. The Court finds exercising jurisdiction over Defendants would offend the traditional notions of fairness and substantial justice because, as outlined above, Defendants did not purposely avail themselves to the state of Georgia. The Court finds this scenario similar to Gee v. Reingold in which a Georgia resident hired a Tennessee attorney to represent him in Wisconsin litigation. 578 S.E.2d 575 (Ga. Ct. App. 2000). When the Georgia

resident suffered an adverse judgment, he brought a legal malpractice claim against the Tennessee attorney in Georgia. Id. The Georgia Court of Appeals affirmed there was no personal jurisdiction over the attorney because the services were performed out of state and pertained to non-Georgia matters, and "standing alone, a nonresident's telephone or mail contact in Georgia, or even a nonresident's visits to Georgia, is generally insufficient to show the minimum contacts with the State necessary to establish personal jurisdiction." Id. at 578 (citation omitted). Similarly, Plaintiff hired an out of state attorney for out of state litigation, so any actions that in some way affected the state of Georgia pertained to non-Georgia matters and are not enough to establish personal jurisdiction. Defendants agreed to represent Plaintiff while he lived in California for a case that was pending in California. All interactions they ultimately had with the state of Georgia resulted from Plaintiff's move, and not due to their own actions. Thus, it would be unfair to require them to appear in Georgia for court when they had no clear intentions of engaging in business across the country. The Court finds exercising jurisdiction over Defendants would be unreasonable as it would "result solely from 'random,' 'fortuitous' or 'attenuated' contacts." Lima Delta Co. v. Glob. Aerospace, Inc., 752 S.E.2d 135, 139 (Ga. Ct. App. 2013) (citation omitted).

17

Plaintiff also alleges the Court has personal jurisdiction over Defendants because of their tortious conduct. (Doc. 17, at 6-7.) Any alleged tortious conduct arises from the same transaction with Defendants in California, not in Georgia. Thus, Plaintiff's vague and conclusory allegations of tortious conduct are also not enough to establish personal jurisdiction over Defendants. See Gee, 578 S.E.2d at 579 ("The damage from the allegedly tortious conduct was not sustained in Georgia simply because the Plaintiff is a resident of Georgia. A tort occurs when and where the actual injury or accident takes place, and not at the place of the economic consequences of that injury." (citations omitted and alterations adopted).) Therefore, this attempt at personal jurisdiction also fails.

3. Conclusion

Based on these findings, the Court finds the Court lacks personal jurisdiction over the Defendants. As a result, Defendants' renewed motion to dismiss (Doc. 18) is **GRANTED**.

### III. CONCLUSION

Based on the foregoing, **IT IS HEREBY ORDERED** that Plaintiff's motion to remand (Doc. 7) is **DENIED**, Defendants' motion to dismiss (Doc. 6) is **DENIED AS MOOT**, and Defendants' renewed motion to

dismiss (Doc. 18) is **GRANTED**. The Clerk is **DIRECTED** to **TERMINATE** all pending motions and deadlines, if any, and **CLOSE** this case.

**ORDER ENTERED** at Augusta, Georgia, this 15th day of March, 2024.

_____
J. RANDAL HALL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA